**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SOL3, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-255** |
| | : | |
| **INVERSAL INC., NEW ERA DEALS, LLC, MARC ROCA** | : | |
| | : | |

# MEMORANDUM

**MURPHY, J.** **August 12, 2026**

This case is about crease protectors, a popular shoe accessory that allows sneaker lovers to sport their shoe of choice while preserving that fresh-out-of-the-box look. A seller of crease protectors, SOL3, sued for copyright infringement because defendants went a step too far when they allegedly copied, altered, and used SOL3's computer-generated image to market their own product. Now, the shoe is on the other foot: the defendants move for summary judgment, arguing that SOL3's claims are unsupported by law or fact. After careful review of the summary judgment briefing, we will not boot this case off our clogged docket. We grant the motion in part, dismissing a sole defendant, Inversal, and preluding SOL3 from recovering indirect profits. But SOL3's copyright claim remains on solid footing: jury will determine whether the defendants infringed.

## I. Background

Plaintiff SOL3 LLC sells crease protectors for sneakers.[1] DI 31 at ¶ 2. The crease protectors are molded shoe inserts made from a "flexible thermoplastic rubber" that are intended to prevent creases in the toe box of shoes and sneakers. *Id.* at ¶ 3. SOL3 uses a design that incorporates air holes for comfort and guide lines on the underside of the protectors for helping

[1] The facts summarized here are taken solely from New Era's statement of undisputed material facts. DI 31.

users cut them to size. *Id.* SOL3's design is the same as that used by another seller since at least 2020, and is the subject of a design patent owned by a resident of China. *Id.* at ¶ 6. SOL3 does not own the crease protector design. *Id.*

In 2021, SOL3 used a third-party platform, called Fiverr, to engage a freelance contractor to produce a computer-generated image embodying the crease protector for use on boxes containing its product. *Id.* at ¶¶ 4-5, 7. SOL3 provided the freelancer, whose username was "Dalibor S," with reference photos on which to base the creation of the computer-generated image. *Id.* at ¶¶ 7, 9. Dalibor created the images as requested, provided them to SOL3, and received $53.44 for the images he produced. *Id.* at ¶¶ 10-11. SOL3 no longer possesses the reference images that it provided to Dalibor. *Id.* at ¶ 12.

In November of 2024, SOL3 allegedly learned that defendant New Era Deals, LLC (a fellow seller of, among other items, crease protectors) was using images that SOL3 believed were copied from those produced by Dalibor. DI 34 at 3; DI 31-15 at 4. A month later, SOL3 sent a notice to Amazon under the Digital Millenium Copyright Act (DMCA) claiming that New Era used its image without its authorization. DI 31-17. Between December 31, 2024, and January 1, 2025, defendant Marc Roca — using an email address that ended in "Inversal.com" — contacted SOL3 on behalf of New Era; inquired about SOL3's DMCA claim with Amazon; assured SOL3 it "would not happen again"; and inquired about SOL3 owner Alex Kassarich's interest in selling SOL3. DI 31-18.

On January 8, 2025, SOL3 submitted an application to the United States Copyright Office for the registration of one of Dalibor's images. DI 31 at ¶ 13. The application, certified by SOL3's owner Alex Kassarich, was titled "Product Images for SOL3 Crease Protectors;

specified the image as a "Work made for hire"; excluded "any utilitarian or functional design of the product as a useful article,"; and consisted of "2-D artwork." *Id.* at ¶ 14. The Copyright Office registered the work submitted in SOL3's application on January 10, 2025, and included on the registration certificate: "Registration does not extend to any useful article depicted. Registration extends to deposited artwork only." *Id.* at ¶ 15.

Dalibor did not sign any written instrument of conveyance, or any note or memorandum transferring ownership of copyright in any of the images he produced to SOL3, including the image used in SOL3's application. *Id.* at ¶ 16. Nor did Dalibor sign any written instrument agreeing that the produced images were considered a work made for hire. *Id.* at ¶ 17. SOL3 brought claims of copyright infringement against New Era, Mr. Roca, and Inversal on January 15, 2025. DI 1.

## II. Motion at issue

SOL3 brings a claim for copyright infringement, alleging that New Era infringed its registered copyright by reproducing and publicly displaying the image SOL3 commissioned from Dalibor on New Era's Amazon Storefront, in product listings and packaging, and on its website. DI 28 at ¶ 66. New Era moves for summary judgment, arguing that "[d]ecades of copyright law stand between SOL3 and the relief it seeks."[2] DI 34 at 1. More specifically, New Era says that SOL3: (1) cannot identify any protectable expression in the asserted work; (2) cannot establish ownership of a valid copyright; (3) has an invalid copyright registration due to material misrepresentations; (4) cannot prove copying; (5) cannot recover New Era's profits as a

[2] Unless otherwise specified, we refer to New Era, Mr. Roca, and Inversal collectively as "New Era."

matter of law; and (6) has produced no evidence of infringement by Mr. Roca or Inversal. *Id.* at 6-22.

SOL3 opposes each of New Era's arguments. DI 36. But in doing so, SOL3 reneges on its representation to the court that it did not dispute any facts as recited by New Era and attaches a declaration and six exhibits to its opposition brief. DI 36-1-DI 36-6. Under § 9 of our policies and procedures, the moving party at summary judgment must serve its statement of undisputed material facts on the non-moving party 28 days before the summary judgment deadline.[3] At least 14 days before the summary judgment deadline, the non-moving party must serve its response on the moving party, responding to each of the factual assertions made by the moving party and identifying any additional facts the responding party intends to submit as part of its summary judgment briefing. The result, intended to help join the issues and increase efficiency at summary judgment, is a cohesive document identifying the purported factual disputes remaining for disposition at either trial or summary judgment.

On March 13, 2026, New Era complied with our summary judgment procedures by serving its statement of undisputed material facts on SOL3. DI 31 at 1 n. 1. SOL3 did not respond to New Era's statement. *Id.* New Era then moved for summary judgment and included a footnote in its statement of undisputed facts explaining that it served an "identical" document on SOL3 and received no response. *Id.* We ordered the parties to meet and confer and provide an update on SOL3's lack of a response. DI 33. In that order, we noted: "If the footnote is accurate, then ***non-movant will of course be barred from disputing any of the facts or injecting any new facts into the summary judgment record***; in other words, non-movant will file ***only*** an

[3] Available at https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/murpol.pdf

opposition brief." *Id*. (emphasis added). The parties filed a joint statement the following day "confirm[ing] their understanding that plaintiff SOL3 LLC is barred from disputing any of the facts or injecting any new facts into the summary judgment record and will file only an opposition brief." DI 35.

Thus, while SOL3 purports to oppose summary judgment "on the existing record" and says that it "does not dispute Defendants' Statement of Undisputed Material Facts," it nevertheless relies on its own version of the record. DI 36 at 4. We will not permit such sleight of hand. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018) (Noting, where plaintiff failed to comply with local rule governing summary judgment procedures, that "[i]t is beyond question that the District Court has the authority to strike filings that fail to comply with its local rules."); *see also Stern v. Aracri Project*, 2025 WL 899320, at *3 (E.D. Pa. March 21, 2025) (Beetlestone, J.) (striking opposition brief for failure to comply with policies and procedures and local rules). As the parties agreed and consistent with our policies and procedures, we rely only on the facts recounted in New Era's statement of undisputed material facts to resolve the instant motion. And we conclude that the record contains sufficient evidence warranting a trial on SOL3's claims of copyright infringement as to New Era and Mr. Roca.

## III. Standard of review

Summary judgment lies where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the discussion below reveals, even a seemingly one-sided record such as the one before us may contain genuine disputes of material fact. Reviewing the facts of record as supplied only by New Era, we consider whether New Era is entitled to judgment as a matter of law.

## IV. Discussion

A claim for copyright infringement requires the plaintiff to show (1) ownership of a valid copyright and (2) unauthorized copying of original elements of the plaintiff's work. *Dun & Broadstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002); 17 U.S.C. § 102(a). But the second element, unauthorized copying, consists itself of two "frequently conflated" elements: (a) actual copying, and (b) material appropriation of the copyrighted work. *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018) (citation modified). This "foundational" distinction is important because "without proof of actual copying the amount of similarity between two works is immaterial." *Id.* Taking the arguments in the order presented by New Era, we conclude that the available record demonstrates genuine factual disputes warranting a trial. However, we grant part of the motion for summary judgment: SOL3 will be precluded from recovering New Era's profits for lack of any evidence to support such recovery, and Inversal will be dismissed for lack of evidence that it engaged in or contributed to the infringement alleged here.

### A. SOL3's allegedly copyrighted material is protectable

First, New Era argues that SOL3's allegedly protected work is a derivative of preexisting, unprotectable material. DI 34 at 6-10. New Era says the work is derivative of source images that SOL3 provided to Dalibor, and the crease protector's preexisting, publicly available design, such that "the only protectable expression—if any—would be the freelancer's incremental original artistic contributions." *Id.* at 7. The problem, according New Era, is that SOL3 has purportedly failed to identify any protectable expression. *Id.* We disagree.

New Era relies on the language of the work's registration, which says that it "does not

extend to any useful article depicted," while seemingly overlooking the fact that the registration specifies it extends to the "deposited artwork only." *Id.* at 9. SOL3's copyright application also identifies the "New material included in the claim" as the "2-D artwork." DI 31-9 at 2. And when asked to identify which elements of the work were protected by copyright, SOL3 responded: "Our contention is that the *image as a whole* is protected by copyright." DI 34 at 8; DI 31-14 at 1 (citation modified). That is enough. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 245-46 (1991) (explaining that "the requisite level of creativity is extremely low" to warrant copyright protection.). New Era's confusion about what the purportedly protected material is does not render it unworthy of copyright protection.

**B. There is a genuine dispute of material fact regarding SOL3's ownership interest in the copyrighted work**

New Era next contends that SOL3 cannot establish ownership of a valid copyright because Dalibor, not SOL3, is the author of the work, the work does not qualify as a "work made for hire" under 17 U.S.C. § 101, and there has otherwise been no valid written assignment of ownership of the copyright under 17 U.S.C. § 204(a). DI 34 at 10-13. We disagree. Under § 204(a) of the Copyright Act, "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). And "[t]he validity and import of an assignment [under section 204(a)] is generally governed by state contract law." *TD Bank N.A. v. Hill*, 928 F.3d 259, 274 (3d Cir. 2019).

Other than § 204(a)'s writing requirement, "[n]o particular formality is required" to assign ownership rights in a copyrighted work, and "[a]ll that is required for the completion of an

assignment is that the assignor 'manifest an intention to transfer the right to another person.'" *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822. 831 (3d Cir. 2011). So, the author of the copyrighted work may manifest an intention to transfer his rights directly, or "to a third person on his behalf[.]" *Barefoot Architect*, 632 F.3d at 631; *TD Bank*, 928 F.3d at 274 (applying New York law and noting same).

New Era acknowledges that the Fiverr terms of service provide that "the Seller expressly assigns to the Buyer the copyright."[4] DI 34 at 11; DI 31-11 at 26, 49. And, relevant here, the "Ownership" section of the terms of service explains:

> For removal of doubt, in custom created work (such as art work, design work, report generation etc.), *the delivered work and its copyright shall be the exclusive property of the Buyer* and, upon delivery, the Seller agrees that it thereby . . . assigns all right, title, and interest in and to the delivered work to the Buyer.

DI 31-11 at 26 (emphasis added). The terms of service apply to "Buyers," who are "users who purchase services on Fiverr, and "Sellers," who are "users who offer and provide Services on Fiverr." *Id.* at 2-3. Use of Fiverr's website is conditioned on acceptance of the terms of service: a user assents to its terms "[b]y using the Site, opening an account or by clicking to accept or agree to the Terms of Service when [the] option is made available," and if a user does "not want to agree" to its terms, he "must not access or use the site." *Id.* at 1.

The language of the terms of service is clear. Based on this record, neither SOL3 nor Dalibor would have been permitted to register for and use the Fiverr website without agreeing to those terms. As such, Dalibor must have plainly manifested an intent to assign his right to the

[4] We will not, as New Era urges, exclude the terms of service under Federal Rule 37(c)(1) because SOL3 purportedly "produced no actual copy" of them until after the discovery deadline. DI 34 at 12. New Era says that SOL3 "identified the Fiverr [terms] by hyperlink" during the discovery period, and there is no suggestion that New Era was unable to access the hyperlink to view the contents of the terms of service. *Id.*

copyrighted work to SOL3 prior to engaging in his relationship with SOL3.[5] So, at minimum, there is a genuine issue of material fact regarding SOL3's ownership interest in the copyrighted work and summary judgment for lack of an ownership interest is inappropriate. *See Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014) (explaining that "[t]he extent of [the plaintiff's] authorship and ownership" of the work in question was "a factual question that must be decided by a jury.").

**C. New Era has not shown that SOL3 knew of the purported inaccuracies in its copyright application**

New Era next attacks SOL3's copyright application. New Era says that the copyright application is subject to an invalidity challenge because it "was obtained through knowing material misrepresentations," warranting referral to the Register of Copyrights for an advisory opinion. DI 34 at 14. Under 17 U.S.C. § 411(b)(1), a certificate of registration maintains its validity "'regardless of whether the certificate contains any inaccurate information, unless [] (A) the inaccurate information was included on the application for copyright registration *with knowledge that it was inaccurate*; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022) (quoting 17 U.S.C. § 411(b)(1)) (citation modified). Based on § 411(b)(1)'s carveout, New Era posits that SOL3's copyright registration is subject to invalidity because SOL3's owner, Mr. Kassarich, knowingly and inaccurately described the copyrighted work as a "work for hire" in SOL3's application, and failed "to disclose that the work is derivative of preexisting material." DI 34 at 14-16. Not so.

[5] Acceptance of Fiverr's terms of service and use of its website satisfies § 204(a)'s signing requirement. *See* 15 U.S.C. § 7006(5) (an "electronic signature" is defined as "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record.").

The Supreme Court put it clearly in *Unicolors*:

> Suppose that John, seeing a flash of red in a tree, says, "There is a cardinal." But he is wrong. The bird is not a cardinal; it is a scarlet tanager. John's statement is inaccurate. But what kind of mistake has John made?
>
> John may have failed to see the bird's black wings. In that case, he has made a mistake about the brute facts. Or John may have seen the bird perfectly well, noting all of its relevant features, but, not being much of a birdwatcher, he may not have known that a tanager (unlike a cardinal) has black wings. In that case, John has made a labeling mistake. . . . The labeling problem here is one of law. Does that difference matter here? [] We think it does not.

595 U.S. at 184. Like in *Unicolors*, Mr. Kassarich appears to have made a labeling mistake when he designated the work as a "work for hire" and did not specify that it was derivative of preexisting material in SOL3's application to the copyright office. [6] But such a problem of law in a copyright application does not automatically expose a copyright applicant to invalidity: "it would make no sense if § 411(b) left copyright registrations exposed to invalidation based on applicants' good-faith misunderstandings of the details of copyright law." *Id.* at 187.

New Era contends that SOL3's knowledge is "readily inferred" because Mr. Kassarich filed the copyright application seven days before filing this lawsuit, and later invoked attorney-client privilege when asked about the decision to register the work with the copyright office. DI 34 at 14. But a potential inference of knowledge is notably different than actionable evidence of actual knowledge. New Era has not satisfied § 411(b) — "if Congress had intended to impose a scienter standard other than actual knowledge, it would have said so explicitly." *Unicolors,* 595 U.S. at 185-86. New Era has not shown that Mr. Kassarich knew of the factual and legal deficiencies in SOL3's copyright application or that SOL3's should be otherwise subject to

---

[6] The error may be legal and factual. *Unicolors*, 595 U.S. at 187 ("Of course, an applicant for a copyright registration—especially one who is not a lawyer—might check the wrong box on the registration documents as a result of a legal, as well as a factual, error.").

invalidity under § 411(b), so we will not request an advisory opinion from the Register of Copyrights.

**D. Whether New Era engaged in copying is a question for the jury to decide**

New Era next argues that SOL3 cannot prove an indispensable element of its claim — that any of the New Era defendants engage in actual copying. DI 34 at 16-19. Evidence of actual copying may be shown by either direct or circumstantial evidence. *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018); *Am. Board of Internal Medicine v. Rushford*, 2026 WL 125193, at *5 (3d Cir. Jan. 16, 2026). In cases where direct evidence is lacking, a plaintiff may show actual copying by pointing to circumstantial evidence suggesting a "reasonable possibility of access" and "probative similarity" between the two works. *Id.* We see a genuine dispute of material fact regarding New Era's access to the copyrighted work and the probative similarity of its allegedly infringing works to SOL3's.

New Era says that SOL3 has produced no evidence that any defendant ever had access to the asserted work. DI 34 at 17. New Era also says that its Amazon listings that included the allegedly infringing works were posted for nearly a year prior to SOL3's takedown notice; images identical or virtually identical to SOL3's copyrighted work were available across dozens of other Amazon listings from which the allegedly infringing works may have been derived; and SOL3 admitted in discovery that it is not aware of any images that are "substantially similar" to the copyrighted work. DI 34 at 17. Moreover, New Era contends that SOL3 cannot show "substantial similarity" between its work and New Era's because SOL3's image has "features that are absent from New Era's images." DI 34 at 18.

SOL3 responds that access is established by New Era's admitted sourcing practices

because New Era sold its product on Amazon, where SOL3's protected image was publicly available, and that the availability of dozens of other similar source images confirms, rather than dispels, the likelihood of New Era's access. DI 36 at 14. As for similarity, SOL3 points to emails from between December 31, 2024 and January 1, 2025, in which Mr. Roca assured SOL3 that his team had altered the allegedly infringing works in light of similarities with SOL3's copyrighted work: "Alex, they changed the renders already to ensure they are not similar . . . this will not happen again." DI 31-18 at 2; DI 36 at 13. SOL3 sees this as all but an admission of New Era's copying, and at any rate, argues that whether the two works are substantially similar is a question for the jury. DI 36 at 13-14.

On the record before us, a reasonable jury could consider the communications between Mr. Roca and SOL3, in conjunction with New Era's admission of widespread availability of source images, and conclude that New Era more likely than not accessed SOL3's copyrighted work. *Krist v. Pearson Education, Inc.*, 419 F. Supp. 3d 904, 907 (E.D. Pa. 2019) (McHugh, J.) (elements of copyright infringement must be proved by a preponderance of the evidence). And a reasonable jury could similarly find — by making a side-by-side comparison of the two works combined with Mr. Roca's communications with SOL3 — that the images used by New Era are substantially similar. As is often the case in copyright cases, determining whether two works are substantially similar is "an extremely close question of fact" such that "summary judgment has traditionally been disfavored in copyright litigation." *Tanksley*, 902 F.3d at 171 (citation modified). We decline to make that factual finding and leave it to a jury to decide.

**E. SOL3 is unable to show indirect profits, but it may be able to show actual damages**

Turning to damages, New Era argues that SOL3 is barred from recovering any of New Era's profits as a matter of law because SOL3 has failed to satisfy the requirements of 17 U.S.C.

§ 504(b). We agree. Under that provision, to recover the profits of the infringer that are attributable to the infringement, the plaintiff must "present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). There must be a "causal nexus between the infringement and the infringer's gross revenue," and the causal connection must amount to more than "mere speculation." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 396 (3d Cir. 2016) (citation modified). SOL3 has not done so here.

SOL3 attempts to offload its burden at summary judgment by blaming New Era, suggesting that we should deny New Era's motion because New Era purportedly provided "boilerplate objections" in response to SOL3's requests for production of New Era's profit and loss statements related to its crease protector products, and also refused to produce its "general" profit and loss statements. DI 36 at 16. But if SOL3 needed access to those documents and believes that New Era wrongfully withheld them, SOL3 should have moved to compel their production long ago. SOL3 cannot now point the finger at New Era for its lack of evidence regarding New Era's gross revenues to defeat New Era's motion.[7] We grant New Era's motion on this ground and preclude SOL3 from obtaining damages for indirect profits. However, SOL3 may still seek compensation for its actual damages at trial. *See Leonard*, 834 F.3d at 394-95 (under 17 U.S.C. § 504(b) a plaintiff may obtain a portion of the infringer's profits "[*i*]*n addition to* . . . recovery of actual damages.") (citation modified).

---

[7] SOL3's briefing argued as much when it worked to its benefit. In response to New Era's attempt to preclude allegedly late-produced evidence by SOL3, SOL3 explained: "That is a separate evidentiary motion, not a basis for summary judgment on the merits. Defendants have not filed a motion to strike, exclude or compel evidence[.]"

**F. There is no record evidence that Inversal committed copyright infringement**

Finally, New Era argues that Mr. Roca and Inversal should be dismissed for lack of evidence that either defendant acted collectively with New Era. DI 34 at 21. SOL3 responds that Mr. Roca's January 1, 2025 email exchange with SOL3 evidences his involvement with the alleged infringement; Mr. Roca's use of an Inversal email address implicates Inversal; and all three defendants' unified discovery approach demonstrates their collective action. DI 36 at 16-18.

"A defendant may be found liable for copyright infringement on a direct or contributory theory of liability." *Star Pacific Corp. v. Star Atlantic Corp.*, 574 F. App'x 225, 230 (3d Cir. 2014). Direct liability requires that the plaintiff show an act of infringement by the defendant himself, whereas contributory liability extends to "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the activity of another[.]" *Id.* (quoting *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)) (citation modified). Thus, an individual defendant's role as a "principal" has been deemed "strong evidence" of contributory liability. *Id*. at 230. That is because, in part, "the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of the copyrighted materials." *Id.* (citation modified).

On this record, there is evidence from which a reasonable jury could conclude that Mr. Roca contributed to the alleged infringement of SOL3's copyright, but not for Inversal. We agree with SOL3 that Mr. Roca's emails to SOL3 — plainly on behalf of New Era and directly concerning its alleged infringement — constitute evidence that could support a finding that Mr. Roca engaged in, was involved with, and contributed to the infringement of SOL3's copyright.

Mr. Roca's emails ask SOL3 why it reported New Era's alleged infringement to Amazon, express interest in buying SOL3 as a means to "solve our problems," and assure SOL3 that "this will not happen again[.]" DI 31-18 at 1-6. Because this evidence must be weighed by a jury, we deny summary judgment as to Mr. Roca. *See Star Pacic*, 574 F. App'x at 231 (affirming district court's grant of summary judgment in favor of plaintiff because alleged infringer's "testimony is insufficient to create a genuine issue of material fact in the face of the abundant objective evidence of [the alleged infringer's] position of authority[.]").

But the record does not support SOL3's claims against Inversal. The mere use of an Inversal email address, while intriguing, alone cannot support a finding that Inversal committed or contributed to the alleged copyright infringement. As New Era points out, Inversal's corporate relationship with New Era and Mr. Roca are alleged in the complaint based on SOL3's "information and belief." DI 34 at 21 (citing DI 28 at ¶¶ 17, 19). Since then, SOL3 has not adduced any corroborative evidence.[8] Because a party's information and belief is insufficient to create a triable issue, we grant summary judgment in favor of Inversal and dismiss it from the case.

## V. <u>Conclusion</u>

New Era's motion was not the shoo-in it hoped, so this case is heading for trial. A jury must decide the myriad factual disputes relating to New Era and Mr. Roca's alleged infringement of SOL3's copyrighted work. However, absent evidence of any involvement in the alleged infringement here, Inversal is dismissed from the case. And if SOL3 prevails at trial, it will be barred from recovering indirect profits.

---

[8] Nor does SOL3 argue that vicarious liability applies here.